Chief Justice CAPPY, and Justices CASTILLE, EAKIN and BAER join the opinion.

Justice BALDWIN dissents.

Emily D. BOWMASTER, an Incapacitated Person, by and Through Donna BOWMASTER and James R. Bowmaster, Jr., Court–Appointed Guardians of The Estate and Person Emily D. Bowmaster, Appellant.

v.

Gerald CLAIR and Centre Community Hospital, A Corporation.

Appeal of Emily D. Bowmaster.

Superior Court of Pennsylvania.

Argued May 1, 2007.

Filed Aug. 15, 2007.

Reargument Denied Oct. 25, 2007.

Paul A. Hilko, Pittsburgh, for appellant.

Lisa B. Dees, Harrisburg, for Pa. Dept. of Public Welfare, appellee.

BEFORE: STEVENS, KLEIN, and PANELLA, JJ.

OPINION BY STEVENS, J.:

¶1 Emily D. Bowmaster, "Emily" an incapacitated person, by and through Donna and James R. Bowmaster, Jr., "parents", Court appointed guardians of her Estate and Person, and collectively referred to as "Appellants", appeal the November 6, 2006 order of the Court of Common Pleas of Centre County, which ordered that the Trustee of the Special Needs Trust for the benefit of Emily Bowmaster reimburse the Pennsylvania Department of Public Welfare, "DPW", in the amount of $56,517.81 in satisfaction of DPW's subrogation lien. We reverse and remand for a determination as to what extent medical benefits were paid subsequent to the minor reaching the age of majority. The motion to seal portions of the record filed by Appellee, Centre Community Hospital, is denied as moot.

¶2 The relevant facts and procedural history, as stated by the trial court, are as follows:

On October 11, 1985, [Appellant] Emily Bowmaster was born with severe birth defects, including mental retardation.

On August 14, 2003, [Appellants] filed a Complaint against Defendants, alleging Defendants' negligence was the proximate cause of Emily's injuries.

After the commencement of the suit, [Appellants] contacted [DPW]. [Appellants] informed DPW of the litigation and inquired as to any lien that DPW may be asserting, since Emily had been receiving Medical Assistance ("MA") benefits. DPW provided [Appellants] with a statement of claim, which indicated $86,092.53 had been spent on Emily's medical care. However, DPW later issued a new statement of claim, in which it amended the amount spent on Emily's medical expenses to $79,193.12. The first statement of claim erroneously included Emily's educational expenses.

On July 25, 2006, [Appellants] negotiated a settlement of their claim against Defendants.

On August 31, 2006, [Appellants] filed a Petition for Leave to Settle an Incapacitated Person's Case. [The trial court] signed an Order settling the case. The Order required $56,517.81 to be set aside until [the trial court] determined the amount, if any, which must be repaid to DPW to satisfy its lien. This figure was arrived at based on the amount DPW asserted it had spent on Emily's medical care, reduced by applicable attorneys' fees and costs.

[Appellants] and DPW both submitted Briefs to [the trial court] on the issue of DPW's lien. Based on the arguments advanced in the Briefs, [the trial court] issued an Opinion and Order dated November 6, 2006, which directed the Trustee of the Special Needs Trust for the benefit of Emily Bowmaster to reimburse DPW in the amount of $56,517.81.

On November 16, 2006, [Appellants] filed a Notice of Appeal of [the trial court's] November 6, 2006 Opinion and Order. [Appellants] also filed a "Statement of Matters Complained of on Appeal."

Trial Court Opinion Pursuant to Pa.R.A.P. 1925(a) 11/27/06 at 1–2.

¶3 Appellant presents the following issues for our review:

(1) Pennsylvania law recognized that medical expenses incurred before a minor-plaintiff reaches age eighteen can be recovered only by the parents of the minor-plaintiff. Emily's par-

ents' potential claim for past medical expenses was time barred because no claim was filed within two years of Defendants' negligent acts. As a result, did the court err in concluding that DPW has a viable subrogation claim for medical services provided to Emily as a minor?

(2) DPW's subrogation rights were legislatively limited to its actual expenditures under the medical assistance program. Some of Emily's medical expenses were paid by a managed care organization to which DPW paid a monthly capitation rate. DPW's subrogation lien is limited to the capitation rate. Was the trial court's application of recent legislation changing this principle to the present case an impermissible retroactive application of the amendment and thus an error of law?

Brief of Appellant at 4.[1]

¶ 4 Appellants claim that DPW was not entitled to the reimbursement of medical expenses to the extent the reimbursement covered amounts paid during Appellant's, Emily's, minority. Appellants argument is based on a novel issue in this case. The parties do not dispute that the parents did not bring an action to recover medical expenses for the period covering Emily's minority. However, a dispute arises as to how provisions found in the Fraud and Abuse Control Act, 62 P.S. § 1401 *et seq.*, are to be applied in such a situation.

¶ 5 In order to reach the underlying merits of the issue presented, we must necessarily set forth certain general principles governing the payment and collection of benefits paid on behalf of a minor. Relevantly, with regard to the statute of limitations, this Court has stated:

> The statute of limitations begins to run as soon as the right to institute and maintain a suit arises. The statute of limitations required aggrieved individuals to bring their claims within a certain time of the injury, so that the passage of time does not damage the defendant's ability to adequately defend against claims made. Once the prescribed statutory period for commencing a cause of action has expired, the complaining party is barred from bringing suit.

*Bowe v. Allied Signal, Inc.*, 806 A.2d 435, 439 (Pa.Super.2002) (citations omitted).

¶ 6 [42 Pa.C.S.A. § 5533(b) provides:]

> **(b) Infancy.**—If an individual entitled to bring action is an unemancipated minor at the time the cause of action accrues, the period of minority shall not be deemed a portion of the time period within which the action must be commenced. Such person shall have the same time for commencing an action after attaining majority as is allowed to others by the provisions of this subchapter. As used in this subsection the term "minor" shall mean any individual who has not yet attained the age of 18.

> . . .

> Under Pennsylvania Law personal injury to a minor gives rise to two separate and distinct causes of action, one the parents claim for medical expenses and loss of the minor's services during minority, the other the minor's claim for pain and suffering and for losses after minority.

Parents may pursue their claims . . . even where the child's claim is barred. If both the parent and the child have claims against a defendant for injury to

---

1. Because of our disposition of the first issue in which we reverse the award of the lien amount to DPW, we do not reach the merits of the second issue raised.

the child, the parents may prevail while the child loses. The claims of [parents] are not derivative of their [child's] claim. Their claim may be barred while [the child's] is still assertable.

*Hathi v. Krewstown Park Apartments,* 385 Pa.Super. 613, 561 A.2d 1261, 1262 (1989) (citations and quotation marks omitted). In *Hathi,* this Court determined that the parents in that case were not entitled to use infancy tolling provisions so that the statute of limitations operated to bar their claims. *See also Fancsali v. University Health Center of Pittsburgh et al.,* 563 Pa. 439, 761 A.2d 1159 (2000) (holding statute of limitations runs on parents' medical malpractice action within two years of when suit could have been brought but statute does not apply during child's minority so that child could bring action two years after age of majority reached).

¶ 7 Based on these principles, it is clear Emily could not have asserted a claim for medical expense in her own right during her time of minority. Further, parents did not assert the claim during the applicable time allotted so that parents were time-barred from raising the claims when the suit commenced in 2003. Therefore, we must decide whether DPW would still be entitled to any amount of the settlement obtained by Emily.

¶ 8 Appellants claim DPW should not be allowed to collect medical expenses paid during Emily's minority because Emily could not, and parents did not, recover such medical expenses so that none of the funds set forth within the settlement agreement pertained to those expenses. DPW refutes this claim citing to provisions found in 62 P.S. § 1409(b)(1), (7), (9) and (11). These sections provide as follows:

(b)(1) When benefits are provided or will be provided to a beneficiary under this section because of an injury for which another person is liable, or for which an insurer is liable in accordance with the provisions of any policy of insurance issued pursuant to Pennsylvania insurance laws and related statutes the department shall have the right to recover from such person or insurer the reasonable value of benefits so provided. The Attorney General or his designee may, at the request of the department, to enforce such right, institute, and prosecute legal proceedings against the third person or insurer who may be liable for the injury in an appropriate court, either in the name of the department or in the name of the injured person, his guardian, personal representative, estate or survivors.

(7) In the event of judgment, award or settlement in a suit or claim against such third party or insurer:

(i) If the action or claim is prosecuted by the beneficiary alone, the court or agency shall first order paid from any judgment or award the reasonable litigation expenses, as determined by the court, incurred in preparation and prosecution of such action or claim, together with reasonable attorney's fees, when an attorney has been retained. After payment of such expenses and attorney's fees the court or agency shall, on the application of the department, allow as a first lien against the amount of such judgment of award, the amount of the expenditures for the benefit of the beneficiary under the medical assistance program.

(ii) If the action or claim is prosecuted both by the beneficiary and the department, the court or agency shall first order paid from any judgment or award, the reasonable litigation expenses incurred in preparation and prosecution of such action or claim together with reasonable attorney's fees based solely on the services ren-

dered for the benefit of the beneficiary. After payment of such expenses and attorney's fees, the court or agency shall apply out of the balance of such judgment or award an amount of benefits paid on behalf of the beneficiary under the medical assistance program.

(iii) With respect to claims against third parties for the cost of medical assistance services delivered through a managed care organization contract, the department shall recover the actual payment to the hospital or other medical provider for the service. If no specific payment is identified by the managed care organization for the service, the department shall recover its fee schedule amount for the services.

(9) Unless otherwise directed by the department, no payment or distribution shall be made to a claimant or a claimant's designee of the proceeds of any action, claim or settlement where the department has an interest without first satisfying or assuring satisfaction of the interest of the Commonwealth. Any person who, after receiving notice of the department's interest, knowingly fails to comply with the obligations established under this clause shall be liable to the department, and the department may sue to recover from the person.

(11) Except as otherwise provided in this act, notwithstanding any other provision of law, the entire amount of any settlement of the injured beneficiary's action or claim, with or without suit, is subject to the department's claim for reimbursement of the benefits provided any lien filed pursuant thereto, but in no event shall the department's claim exceed one-half of the beneficiary's recovery after deducting for attorney's fees, litigation costs, and medical expenses relating to the injury paid for by the beneficiary.

¶ 9 Based on these provisions, DPW argues that the applicability of the statute of limitations is a non-issue as Emily clearly is a beneficiary under the terms of the statute.[2] In an attempt to ascertain the intent of the legislature in drafting the provisions cited above, we turn to the rules of statutory construction. "Our goal in statutory interpretation is to 'ascertain and effectuate the intention of the General Assembly,' and we strive to give effect to all the provisions in a statute." *Keystone Aerial Surveys, Inc. v. Pennsylvania Property & Casualty Insurance Guaranty Association*, 777 A.2d 84, 90 (Pa.Super.2001) (citations omitted). In so doing, we must begin with a presumption that our legislature did not intend any statutory language to exist as mere surplusage. Accordingly, "whenever possible, courts must construe a statute so as to give effect to every word contained therein." *Wiernik v. PHH U.S. Mortgage Corp.*, 736 A.2d 616, 620 (Pa.Super.1999) (citations omitted).

¶ 10 Considering the plain meaning of the statute, DPW argues we should conclude that Emily is a beneficiary under the terms of the statute and therefore, DPW is entitled to recovery against the settlement made on Emily's behalf regardless of whether funds were specifically set aside for the disputed medical expenses. We cannot agree with this interpretation. Clearly, parents have an obligation to support their children until the age of majority is reached. *See Perlberger v. Perlber-*

---

**2.** DPW cites to a myriad of cases to support its claim that it is entitled to reimbursement. However, in each case cited, parents and child both filed suit for recovery so that medical expenses during the child's minority were clearly a part of the recovery. As that is not the situation we are presented with in this case, we do not discuss these cases further.

*ger*, 426 Pa.Super. 245, 626 A.2d 1186, 1201 (1993), *appeal denied*, 536 Pa. 628, 637 A.2d 289 (1993) (setting forth parents' obligation to support a minor child). As it was the parents' obligation, medical expenses were paid by DPW to the parents to care for Emily. Accordingly, the true beneficiary of the benefits received prior to Emily's majority appears to be her parents as it was they who had the support obligation in the first place. Had the parents received a recovery, we would have agreed that DPW would have been entitled to that amount against the settlement made regardless of how the funds were allotted. That is not the situation we are presented with here as parents did not seek recovery. Nothing in the statute allows us to ignore longstanding principles, particularly the principles stated above related to the statute of limitations and what recovery is possible by a minor during his or her period of minority and what recovery could be sought by the minors' parents. DPW asks us to simply ignore the statute of limitations and the fact that Emily could not recover these medical expenses. This we simply cannot do. As the parents did not seek recovery of the medical expenses within the applicable statute of limitations and as Emily could not have sought recovery of those expenses in her own right, we are constrained to conclude that the trial court erred in its conclusion to the contrary.[3]

¶ 11 Lending further support to our finding today is the strong consideration this Commonwealth has placed in protecting the interests of minors. Pa.R.C.P. 2039(a) provides, "[n]o action to which a minor is a party shall be compromised, settled or discontinued except after approval by the court pursuant to a petition presented by the guardian of a minor." It has long been stated that "Rule 2039 was adopted to ensure that the interests of minor litigants are protected above all other conflicting interests." *Fancsali v. University Health Center of Pittsburgh*, 563 Pa. at 446, 761 A.2d at 1162 (citations omitted). Accepting DPW's interpretation today would contradict this long-standing principle as DPW is seeking to reach back to Emily's interest while she was a minor.[4] As the trial court determined that part of Emily's recovery was subject to the interest of DPW, we are constrained to reverse and remand. On remand, the trial court should consider to what extent the reimbursement ordered related to medical expenses incurred subsequent to Emily reaching the age of majority so that the proper reimbursement may be made.

---

3. It is likewise of no moment that the parents had no incentive to sue prior to Emily reaching the age of majority. DPW claims that when it paid Emily's medical expenses, it was unaware that the bills were a result of negligence of a third party tortfeasor. Appellee's Brief at 15. Further, DPW alleges that it did not become aware of the personal injury lawsuit until April 12, 2004. *Id.* We cannot accept DPW's ignorance as a basis to allow recovery at this time. It is inconceivable that DPW would pay benefits during Emily's entire minority, and extend those payments throughout her years of majority, without knowing the basis for such payments. At the very least, DPW could have sought to intervene in order to seek recovery. *See Miller v. Lankenau Hospital*, 152 Pa.Cmwlth. 266, 618 A.2d 1197 (1992) (DPW permitted to intervene to seek to obtain recovery of medical payments made).

4. We must additionally reject DPW's claim that denying their claim in this matter would in effect open up Pandora's box to other persons similarly situated and result in a form of "double-dipping." This is not a case of so-called "double-dipping." Emily sustained injuries that will require continued medical care resulting in continued medical expenses for which DPW continues to pay. Taking away monies at this point from her settlement would likely result in further payment and would not lessen the burden to taxpayers as DPW would like us to conclude.

¶ 12 Order **REVERSED.** Case **RE-MANDED** for a re-calculation of the amount to be reimbursed to DPW based on the medical benefits paid to Emily after she reached the age of majority. Motion to seal records filed by Appellee, Centre Community Hospital, **DENIED** as moot.[5] Jurisdiction relinquished.

5. The motion to seal records is denied as moot as a determination was made before this Court to continue to seal portions of the records. Order dated 2/2/07. Upon return to the trial court, that court may determine what portions of the record should remain under seal.